

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| BROTHERHOOD OF MAINTENANCE WAY EMPLOYEES; BURLINGTON SYSTEM; BURLINGTON NORTHERN SYSTEM; and SANTA FE SYSTEM FEDERATIONS OF THE BROTHERHOOD OF MAINTENANCE WAY EMPLOYEES, on behalf of themselves and all members in the class of persons harmed; and KENNETH RASHID and MICHAEL SCOTT, individually and on behalf of all similarly situated track employees, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 05 C 223 |
| BURLINGTON NORTHERN SANTA FE RAILWAY COMPANY, | ) ) ) | Judge Ruben Castillo |
| Defendant. | ) ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiffs Brotherhood of Maintenance Way Employees, Burlington System, Burlington Northern System, Santa Fe System Federations of the Brotherhood of Maintenance Way Employees, Kenneth Rashid, and Michael Scott (collectively "BMWE") allege that Defendant Burlington Northern and Santa Fe Railway Company ("BNSF") violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213, by refusing to reasonably accommodate employees with disabilities who are unable to fulfill a truck licensing and certification requirement. (R. 1, Compl. at 1 ¶ 1, 4 ¶ 1.) BNSF's motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) is currently before the Court. (R. 8-1.) For the reasons provided below, we partially grant and partially deny BNSF's motion to dismiss.

## RELEVANT FACTS[1]

BNSF is a common carrier and the nation's second-largest railroad. (R. 1, Compl. at 2 ¶ C.) BMWE is a labor organization which represents over 90% of the maintenance of way employees in the United States and Canada. (*Id.* at 2 ¶ A.) BNSF and BMWE are bound by a collective bargaining agreement ("CBA"). (R. 10, Def.'s Mem., Ex. 2, CBA.) The CBA contains rules governing "the hours of service, rates of pay and working conditions of all employees not above the rank of . . . foreman[.]" (*Id.*, Ex. 2, CBA at 2.) The CBA also contains procedures through which employees may bid on new positions. (*Id.*, Ex. 2, CBA at 22-25.) Specifically, the CBA states that "all . . . new positions . . . shall be bulletined in the seniority district for the sub-departments involved." (*Id.*, Ex. 2, CBA at 22.) It also states that "[e]ach new position or vacancy bulletined as provided in Rule 21 will be assigned to the senior qualified applicant who holds seniority on the seniority roster from which the position in question is filled and in the rank of that position." (*Id.*, Ex. 2, CBA at 24.)

BNSF truck drivers must have a commercial driver's license and be certified by the Department of Transportation ( "CDL/DOT certification"). (R. 1, Compl. at 4 ¶ 1.) A person with physical impairments such as a heart condition, vision problems, or renal failure cannot obtain the CDL/DOT certification. (*Id.* at 12 ¶ 4.) In January 2001, BNSF began requiring its

---

[1]While we have taken most of the facts set forth in this section from BMWE's original complaint, (R. 1), we have gleaned the facts pertaining to the parties' collective bargaining agreement from BNSF's submissions in support of its motion to dismiss. As discussed in the legal standards section, *infra*, because BNSF has challenged the basis of subject matter jurisdiction described in the original complaint the Court may consider the submissions of the parties in addition to the complaint's factual allegations to determine whether subject matter jurisdiction exists. *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 701 (7th Cir. 2003).

foremen to be CDL/DOT certified. (*Id.* at 4 ¶ 2.) Approximately fifty disabled foremen were

unable to obtain the CDL/DOT certification and at least two foremen lost their jobs as a result.

(*Id.* at 6 ¶ 5, 9 ¶ 11.) Welders also must be CDL/DOT certified. (*Id.* at 4 ¶ 2.) BNSF

accommodated some disabled, uncertified welders and foremen by either allowing them to obtain

state licenses to operate trucks within a state, applying the CDL/DOT certification requirement in

a manner which allows them to keep working, or by simply ignoring the CDL/DOT certification

requirement. (*Id.* at 6 ¶ 6; 10 ¶ 13.)

BMWE claims that BNSF's application of the CDL/DOT certification requirement to

disabled individuals violates the ADA. As a result, BMWE seeks declaratory relief finding

BNSF's policy illegal and stating that BNSF may not make CDL/DOT certification a condition of

employment for disabled foremen. BMWE also seeks equitable relief preventing BNSF from

applying the CDL/DOT certification requirement to disabled track workers. (*Id.* at 15 ¶¶ 1-3.)

BMWE seeks relief on behalf of a class of "all BNSF employees holding track foremen or welder

seniority dates as of January 1, 2001 who were at varying times since then disqualified from their

position by reason of being unable to obtain CDL/DOT certification because of physical or mental

disabilities." (*Id.* at 11 ¶ 1.)

### LEGAL STANDARDS

In reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), we

must "accept the complaint's well-pleaded factual allegations as true and draw reasonable

inferences from those allegations in favor of the plaintiff." *United Transp. Union v. Gateway W.

Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). When the accuracy of the complaint's statement of

subject matter jurisdiction is in dispute, however, the Court may look beyond the complaint to

3

review any evidence the parties submit to illuminate the jurisdiction question. *Alicea-Hernandez*

320 F.3d at 701; *see also Sapperstein v. Hager*, 188 F.3d 852, 856 (7th Cir. 1999) (stating that

"[t]he presumption of correctness that we accord to a complaint's allegations falls away on the

jurisdictional issue once a defendant proffers evidence that calls the court's jurisdiction into

question"). Ultimately, the plaintiff bears the burden of establishing that it has satisfied the

jurisdictional requirements. *See Kontos v. U.S. Dep't of Labor*, 826 F.2d 573, 576 (7th Cir.

1987).

## ANALYSIS

### I.      Federal Claim Preclusion Under the Railway Labor Act

To resolve the present motion, we must determine whether the Railway Labor Act

("RLA"), 45 U.S.C. §§ 151-188, precludes BMWE's ADA claim and thereby deprives this Court

of subject matter jurisdiction. (R. 10, Def.'s Mem. at 2.) Congress enacted the RLA, in part, "to

provide for the prompt and orderly settlement of all disputes growing out of . . . the interpretation

or application of agreements covering rates of pay, rules, or working conditions." 45 U.S.C. §

151a(5). In order to accomplish this goal, the RLA sets up a mandatory arbitral mechanism to

handle such disputes. 45 U.S.C. § 153 First (i); *see also Hawaiian Airlines, Inc. v. Norris*, 512

U.S. 246, 248 (1994). All "minor disputes" are subject to this arbitration mechanism. *Hawaiian*

*Airlines*, 512 U.S. at 252-53. Minor disputes are those which involve the interpretation or

application of existing labor agreements, or which involve the duties or rights created or defined

by a CBA. *Id.* at 252-53, 258. If BMWE's claim constitutes a minor dispute, then it is subject to

the RLA's mandatory arbitration mechanism. *Id.* at 253; *Tice v. Am. Airlines, Inc.*, 288 F.3d 313,

314 (7th Cir. 2002) ("*Tice I*"). Accordingly, this Court would lack subject matter jurisdiction to

4

review the claim. *Brown v. Ill. Cent. R.R. Co.*, 254 F.3d 654, 658 (7th Cir. 2001).

To decide whether a minor dispute exists, we must first determine whether we will have to interpret or apply the CBA in order to resolve BMWE's ADA claim. *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 407 (1988); *see also Hawaiian Airlines*, 512 U.S. at 262. If the dispute touches only tangentially on the CBA, the RLA will not preclude the ADA claim. *Monroe v. Missouri Pac. R.R. Co.*, 115 F.3d 514, 519 (7th Cir. 1997). If the outcome of the dispute depends on one party's preferred interpretation of the CBA, however, it should be resolved by an arbitrator pursuant to the RLA. *Tice I*, 288 F.3d at 315. In other words, BMWE's ADA claim is precluded by the RLA if "it cannot be adjudicated without interpreting the CBA, or if it can be 'conclusively resolved by interpreting the CBA.'" *Brown*, 254 F.3d at 658 (citing *Hawaiian Airlines*, 512 U.S. at 261-62).

The ADA prohibits employers from discriminating against "qualified individual[s] with disabilities," which includes failing to make reasonable accommodations to the known limitations of an otherwise qualified disabled individual. 42 U.S.C. § 12112(a) & (b)(5)(A); *Brown*, 254 F.3d at 659. An ADA claimant must demonstrate that he can perform the "essential functions" of the job at issue with or without a reasonable accommodation. *Brown*, 254 F.3d at 659. A plaintiff may bring an ADA claim in federal court "*unless* the resolution of [the] ADA claim requires the court to interpret the CBA's terms as a potentially dispositive matter." *Id.* at 664 (emphasis in original). The ADA, however, does not require accommodations that sacrifice the collectively bargained-for seniority rights of other employees. *Id.* at 661 (citing *Eckles v. Consol. Rail Corp.*, 94 F.3d 1041, 1051 (7th Cir. 1996)). Thus, a requested accommodation that would interfere with a CBA's seniority system would require the Court to interpret the CBA's seniority provisions as a

potentially dispositive matter. *Id.* In those circumstances, the RLA would preclude federal court jurisdiction over the ADA claim. *Id.*

## II.     BMWE's Requested Accommodation

In its original complaint, BMWE requests an accommodation in the form of a waiver of the CDL/DOT certification requirement. (R. 1, Compl. at 15.) BNSF argued in its opening brief that the RLA precludes BMWE's ADA claim because a waiver would bypass the CBA's bulletining procedures and would require the Court to interpret the CBA as a potentially dispositive matter. (R. 10, Def.'s Mem. at 1-2.) In response, BMWE clarifies that its requested accommodation is designed to work within the bargained-for bulletining procedures set forth in the CBA and allows bulletining of the positions pursuant to the CBA's requirements.[2] BMWE states that the accommodation could be accomplished by one of two methods. First, BMWE states that "[t]he sole accommodation requested is to bulletin the jobs as they had been, without [the] CDL/DOT requirement." (R. 14, Pls.' Resp., Ex. 3, Am. Compl. at 11 ¶ 15(e).) The waiver could be achieved by re-bulletining the foreman position without the CDL/DOT requirement and allowing all employees to bid on it. (*Id.*, Ex. 3, Am. Compl. at 12 ¶ 15(e).) We will refer to this accommodation as the "waiver-for-all" method.

Though BMWE states that the above method is the "sole accommodation requested," it also suggests a "more simple method" of accommodation. (*Id.*, Ex. 3, Am. Compl. at 12 ¶ 15(g).)

---

[2]Though BMWE attached an amended complaint as an exhibit to its response brief, it never filed the amended complaint with the Court. The amended complaint is identical to the original complaint except for the inclusion of paragraph 15, which provides additional facts describing the nature of the requested accommodation. (R. 14, Pls.' Resp., Ex. 3, Am. Compl. ¶ 15.) Because we may consider the factual submissions of the parties in resolving an attack on the basis for our subject matter jurisdiction, *Alicea-Hernandez*, 320 F.3d at 701, we have incorporated into our analysis the amended complaint's details describing the terms of the requested waiver. We note that even considering the details set forth in the amended complaint, it is difficult to discern the exact nature of the accommodation requested.

Under this second, "more simple" method, BNSF would waive the CDL/DOT certification only for employees with physical impairments that preclude them from obtaining the certification. (*Id.*) The jobs would be re-bulletined for disabled employees without the CDL/DOT requirement. (*Id.*, Ex. 3, Am. Compl. at 12 ¶ 15(h).) We will refer to this accommodation as the "selective waiver" method. BMWE states that neither method of the proposed accommodation requires the purported class members to be placed in the welder or foreman jobs. (R. 14, Pls.' Resp. at 5-6.) BMWE argues that, because its requested accommodation does not bypass the CBA's bulletining procedures, there is no need for the Court to interpret the CBA as a potentially dispositive matter and RLA preclusion does not apply. (*Id.* at 4-6.)

One issue that the Court will have to consider in order to resolve BMWE's ADA claim is whether waiver of the CDL/DOT requirement through either of BMWE's proposed methods is a reasonable accommodation under the ADA. *See* 42 U.S.C. § 12112(a)-(b); *Brown*, 254 F.3d at 659. The question the present motion presents is whether the RLA precludes us from making that determination. Although the parties have not addressed the reasonableness of these two methods separately in their briefs, we find that each method presents its own set of difficulties under the RLA preclusion analysis. Thus, we will address RLA preclusion as it applies to each proposed method of accommodation separately.

## A.    Waiver of the CDL/DOT Certification For Disabled Employees Only

The "more simple" method of accommodation that BMWE seeks is to "allow waiver of [the] CDL/DOT [requirement] whenever a disabled foreman bids." (R. 14, Pls.' Resp., Ex. 2, Hobhein Decl. ¶ 12(b) & Ex. 3, Am. Compl. ¶ 15(g).) Under this selective waiver method, non-disabled employees would only be able to bid for a foreman position if they possess CDL/DOT certification, but disabled employees would be able to bid against non-disabled employees for the

7

foreman position without obtaining the CDL/DOT certification. As a result, this scenario raises significant *Brown*-related preclusion concerns.

In *Brown*, the plaintiff brought a claim against his employer under the ADA after it refused to allow him to work only five days per week in his position, even though that position required him to be available for work seven days per week. 254 F.3d at 656-57. The parties in that case disputed the meaning of several provisions of their CBA, including a provision stating that when "a change is made in the number of days the run is bulletined to operate each week, it will be considered a new run and bulletined accordingly." *Id.* at 661. The Seventh Circuit found that Brown's requested accommodation could create a new position that is subject to bulletining under the CBA, and allowing that accommodation "without first offering the same layoff privileges to more senior trainmen might very well violate the seniority system established by the CBA." *Id.* The court's determination of whether Brown's requested accommodation would violate the seniority provisions was potentially dispositive of the ADA claim because "requested accommodations which would interfere with the bona fide seniority rights of other employees are unreasonable as a matter of law, and not mandated by the ADA." *Id.* (citing *Eckles*, 94 F.3d at 1051). As a result, the RLA precluded Brown's claim. *Id.* at 664.

Under the selective waiver method that BMWE requests here, BNSF would re-bulletin the foreman position without the CDL/DOT certification requirement for disabled employees only. As in *Brown*, allowing that accommodation without offering the same lowered certification requirements to more senior foremen could violate the seniority system set forth in the parties' CBA. The CBA at issue here specifically states that "[e]ach new position . . . bulletined . . . will be assigned to the senior qualified applicant who holds seniority on the seniority roster from which the position in question is filled and in the rank of that position." (R. 10, Def.'s Mem., Ex.

2, CBA at 24.) BMWE's requested accommodation could create a "new position" that is not available for general bidding as required under the CBA because it would take non-disabled employees out of the running for the non-CDL/DOT-certified foreman position.[3] As BNSF points out, this accommodation raises significant questions regarding who is the "senior qualified applicant" for the foreman position within the meaning of the CBA. (R. 15, Def.'s Reply at 6.) BMWE's assertion that the foreman position would be bulletined for disabled employees without the CDL/DOT requirement does not solve that problem. For the Court to determine whether this selective waiver is a reasonable accommodation, we would have to determine whether the disabled employees' ability to bid for the foreman position without meeting the standards that non-disabled employees must meet would interfere with the non-disabled employees' seniority rights under the CBA. The parties clearly disagree on the outcome of that determination, and as explained in *Brown*, this is a potentially dispositive issue. 254 F.3d at 661. As a result, we find that the RLA precludes BMWE's ADA claim to the extent that it seeks accommodation by waiving the CDL/DOT certification requirement for disabled employees only.

**B.    Waiver of the CDL/DOT Certification for All Employees**

Under BMWE's waiver-for-all method of accommodation BNSF would waive the CDL/DOT requirement for the foreman and welder positions and would then bid for those positions pursuant to the CBA's bulletining and bidding procedures. Specifically, BMWE proposes that BNSF put the truck drivers on a separate payroll from the foreman's work group so that the foreman's job could be bulletined without the CDL/DOT requirement. (R. 14, Pls.'

---

[3]If the parties were disputing whether or not the selective waiver for disabled employees would create a "new position" and that dispute were potentially dispositive of the ADA claim, then that dispute would be a matter of CBA interpretation that must be resolved according to the RLA's arbitration procedures. There does not appear, however, to be an active dispute over whether either of the requested accommodations would constitute a new position.

Resp., Ex. 3, Am. Compl. ¶ 15(e).) Under this waiver-for-all method, disabled and non-disabled

employees would bid for the foreman position—without the CDL/DOT certification

requirement—on equal footing. We will address below each of the arguments that BNSF has

made in favor of preclusion to demonstrate why we do not believe that we lack subject matter

jurisdiction to resolve BMWE's ADA claim with respect to the waiver-for-all method of

accommodation.[4]

Although BNSF has only moved to dismiss the original complaint pursuant to Rule

12(b)(1), it makes several arguments on reply that address the merits of BMWE's ADA claim

rather than the Court's subject matter jurisdiction. First, BNSF argues that BMWE's requested

accommodation is not reasonable. It notes that if the positions are re-bulletined without the

CDL/DOT requirement there is no guarantee that the purported class members will receive those

positions. (R. 15, Def.'s Reply at 2-3.) BNSF argues that because the requested accommodation

will not necessarily allow the class members to perform the jobs at issue, it is not a reasonable

accommodation. (*Id.*) While this may be a compelling argument on the merits of BMWE's ADA

claim, BNSF has not shown how this issue has any bearing on our jurisdiction to reach those

merits.

Second, BNSF argues that BMWE has pleaded itself out of court by conceding that BNSF

has the right to establish job qualifications as it has here. (R. 15, Def.'s Reply at 10.) BNSF

argues that because a "qualified individual with a disability" must "satisf[y] the prerequisites for

the position, such as possessing the appropriate educational background, employment experience,

---

[4]Though we have carefully considered all of BNSF's arguments, our discussion here
focuses on BNSF's reply brief arguments because its opening brief assumes that BMWE's
requested accommodation was a blanket waiver of the CDL/DOT certification requirement for
disabled employees that did not include bulletining or bidding for the positions.

skills, licenses, etc.," BMWE's concession prevents them from establishing that the plaintiffs are qualified individuals entitled to relief under the ADA. (*Id.* (citing *Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 563 (7th Cir. 1996) (citing 29 C.F.R. app. § 1630.2(m))).) Again, this argument points out a potential hurdle that BMWE will have to overcome to establish that it is entitled to relief on the merits. BNSF has not demonstrated, however, why this problem deprives the Court of jurisdiction to resolve the claim.

Third, BNSF argues that the waiver-for-all accommodation risks BNSF eliminating what BMWE says is a non-essential function of the foreman and welder positions even though a non-disabled employee could then receive the job under the bulletining procedures.[5] (R. 15, Def.'s Reply at 4-5.) Again, this argument bears on the merits of whether the requested accommodation is reasonable, but it does not deprive us of jurisdiction to consider that question. In an attempt to show that this is a jurisdictional problem, BNSF argues that the only way to guarantee that a disabled employee receives the position is to find that it is not a "new position" subject to bulletining—which is a question an arbitrator would have to resolve—or by granting the disabled employee "super seniority." (*Id.* at 5.) BMWE is not asking, however, that we guarantee that the members of the purported class receive the re-bulletined positions. (*See* R. 14, Pls.' Resp., Ex. 3, Am. Compl. ¶ 15(h).) Instead, BMWE expressly seeks to have the positions re-bulletined so that disabled employees and non-disabled employees can bid for them. Thus we can resolve the ADA claim without deciding which employee should receive the newly-bulletined position. As a result, the problem that BNSF highlights is one that we have jurisdiction to address.

The remainder of BNSF's arguments on reply constitute direct challenges to our subject

---

[5]Although BNSF does not direct this argument solely to the waiver-for-all method of accommodation, its stated concern would not apply under a method in which BNSF eliminated the CDL/DOT certification requirement for disabled employees only.

matter jurisdiction. BNSF's first jurisdictional argument pertains to the "bad effects" of the requested waiver. BNSF broadly argues that BMWE is trying to use the ADA as a back door to create a new position for all employees while avoiding the RLA process. (R. 15, Def.'s Reply at 5-6.) This is especially true, BNSF argues, given BWME's decision to pursue class action treatment of its claim. (*Id.* at 6.) The accommodation BMWE requests, however, works within the bargained-for bulletining process set forth in the CBA. BNSF cites no cases which suggest that class action treatment is an inappropriate mechanism for employees who are subject to a CBA to pursue an ADA claim.

BNSF also argues that if it tried to place the plaintiffs into foreman positions by granting them a blanket waiver of the CDL/DOT certification requirement, other employees could argue that they were the "senior qualified applicants" for the position and that their seniority rights had been violated. (*Id.* at 6-7.) As discussed above, we agree with this argument as applied to an accommodation in which the CDL/DOT certification requirement is waived only for disabled employees. The waiver-for-all accommodation, however, does not raise the same concerns regarding seniority rights that exist under a selective waiver for disabled employees, because the Court would not be in a position to compare the seniority rights of non-disabled and disabled employees in order to determine whether the requested accommodation is reasonable. BMWE has not requested that we place the purported class members into a particular position or give them an advantage as compared to other employees, and it has conceded that the positions would be re-bulletined for all employees pursuant to the procedures set forth in the CBA. As a result, the Court will not have to determine who is the "senior qualified applicant" under the CBA to determine whether the waiver-for-all method is a reasonable accommodation. If we grant the requested accommodation and a dispute arises over who is the "senior qualified applicant," the

parties will be free to resolve that question pursuant to the CBA or through arbitration, if appropriate.

Our ability to determine whether the waiver-for-all accommodation is reasonable without comparing seniority rights not only distinguishes this accommodation from the selective-waiver accommodation, but also from the cases that BNSF relies on. Those cases each found RLA preclusion or preemption where the parties disagreed on the meaning of particular CBA terms. *See Brown*, 254 F.3d at 659-60 (noting dispute over meaning of seven-day work week requirement as set forth in CBA); *Tice I*, 288 F.3d at 316 (noting disagreement over whether CBA included certain rights); *Schiltz v. Burlington N. R.R.*, 115 F.3d 1407, 1414 (8th Cir. 1997) (noting parties' disagreement over interpretation of specific seniority provisions in CBA). Under the waiver-for-all method, we simply do not need to decide the meaning of "senior qualified applicant" or any other terms of the CBA to determine whether BMWE is entitled to relief under the ADA. *See Anthony v. AMR Corp.*, No. 03-C-3681, 2004 WL 1102319, at *4 (N.D. Ill. May 10, 2004) (finding no RLA preclusion where the defendants did not specifically point to any contested issues of CBA interpretation that would resolve the plaintiff's Title VII claims).

BNSF also argues that the declarations submitted by William A. Osborn on behalf of BNSF and Allen R. Hohbein on behalf of BMWE reveal a dispute over whether the requested relief interferes with the CBA's seniority system. (R. 15, Def.'s Reply at 7.) In Osborn's declaration—which BNSF submitted with its opening brief and did not supplement on reply—he states that exempting disabled employees from the CDL/DOT requirements would contravene the CBA's bulletining requirements. (R. 10, Def.'s Mem., Osborn Decl. ¶ 6.) Though Hohbein averred that Osborn's assessment of the accommodation was "absolutely wrong," it is clear that Hohbein was pointing out Osborn's mistaken assumption that the requested accommodation did

not include bulletining the positions. (R. 14, Pls.' Resp., Ex. 2, Hohbein Decl. ¶ 4.) It is

disingenuous for BNSF to suggest that this disagreement is dispositive of the ADA claim when

the disagreement is premised on BNSF's initial mistaken belief that the requested waiver did not

include bulletining the position in accordance with the CBA. BNSF also highlights Hohbein's

disagreement with Osborn's statement that "in some cases, accommodation would effectively

require creation of a special seniority district, in contravention of the CBA." (R. 15, Def.'s Reply

at 7; R. 10, Def.'s Mem., Osborn Decl. ¶ 7.) Osborn's declaration does not include sufficient

facts for us to determine whether this concern is premised on his initial belief that the

accommodation would circumvent the bulletining procedures. Nor can we discern from his

declaration whether this is an actual dispute over any provisions of the CBA that we would have

to resolve in order to decide whether the requested accommodation is reasonable within the

meaning of the ADA. Without such information we cannot say that this purported dispute

demonstrates our lack of subject matter jurisdiction over the ADA claims.[6]

Finally, BNSF argues that we have no jurisdiction to resolve BMWE's ADA claim

because an arbitration award issued on August 27, 2002 found that BNSF's decision to require

CDL/DOT certification for foremen and welders "was a managerial prerogative that was not

arbitrary or unreasonable." (R. 10, Def.'s Mem, Ex. 1, Arbitration Award at 4-5; R. 15, Def's.

Reply at 8-11.) BNSF's arguments on this point are more than a little confusing.[7] On reply,

---

[6]As always, BNSF is free to re-raise the subject matter jurisdiction issue if there is a genuine disagreement over whether the requested accommodation would require us to create special seniority districts in contravention of some provision of the CBA. *United Phosphorous, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 957 (7th Cir. 2003), *cert. denied*, 540 U.S. 1003 (2003) (noting that subject matter jurisdiction challenges can be raised at any time in the litigation).

[7]For example, in its opening brief, BNSF states that the award "confirmed BNSF's prerogative to require CDL/DOT certification and thereby precluded any collateral challenge to BNSF's decision to do so." (R. 10, Def.'s Mem. at 13.) On reply, however, BNSF states that it

BNSF asserts that its point with respect to the arbitration award is that this case is procedurally aligned with *Tice v. American Airlines, Inc.*, 373 F.3d 851, 854-55 (7th Cir. 2004) ("*Tice II*"). (R. 15, Def.'s Reply at 8.) Neither *Tice I* nor *Tice II*, however, support a preclusion finding in this case. In *Tice I*, the Seventh Circuit found that the plaintiffs' federal age discrimination claim should be stayed pending an arbitrator's resolution of whether the CBA at issue there entitled more senior employees to bump less senior ones from certain positions. 288 F.3d at 315-316. In *Tice II*, after the arbitrator resolved that question in the defendant's favor, the Seventh Circuit found itself bound by the arbitrator's decision regarding the CBA's seniority provisions. 373 F.3d at 854-55. The present case is distinguishable because there is no dispute regarding the arbitration award; BMWE concedes that BNSF is entitled to set its own qualification standards. (R. 14, Pls.' Resp., Ex. 3, Am. Compl. ¶ 15(d).) Additionally, the arbitration award BNSF cites made no determination regarding whether the CDL/DOT requirement was reasonable with respect to disabled employees. Finally, the question of whether truck driving is an essential function of the foreman and welder positions—a potentially dispositive issue in this case—is a much broader question than whether it is reasonable or arbitrary for BNSF to require CDL/DOT certification for those positions.

After carefully reviewing the parties' arguments, we find that the RLA does not preclude BMWE's ADA claim to the extent that it seeks accommodation by re-bulletining the foreman and welder positions without the CDL/DOT requirement and allowing disabled and non-disabled employees alike to bid for them. Though BNSF has raised numerous issues on the merits that may present obstacles to BMWE's claim, it has not shown that we will have to engage in a

---

did not make the argument that the award "precludes relitigation of the question whether being able to drive a truck is a legitimate part of a foreman job." (R. 15, Def.'s Reply at 8.)

potentially dispositive interpretation of the CBA to determine whether the waiver-for-all accommodation is reasonable. Nor has it shown that the RLA precludes this claim on any other grounds. As a result, BNSF's motion to dismiss for lack of subject matter jurisdiction is denied as applied to BMWE's ADA claim requesting accommodation in the form of waiver of the CDL/DOT certification requirement for all employees.

## CONCLUSION

Based on the parties' submissions, we find that the RLA precludes BMWE's ADA claim to the extent that it seeks accommodation in the form of waiver of the CDL/DOT requirement for disabled employees only. We find that the Court can resolve BMWE's ADA claim, however, with respect to the waiver-for-all accommodation without interpreting, applying, or circumventing the CBA. As a result, we find that the RLA does not preclude the ADA claim with respect to that accommodation. As a result, we partially grant and partially deny BNSF's motion to dismiss pursuant to Rule 12(b)(1). (R. 8-1.)

BMWE's current complaint is dismissed without prejudice to the filing of an appropriate amended complaint which fully conforms to this opinion. The parties are also encouraged to fully exhaust all remaining settlement possibilities for this lawsuit. The parties are requested to file a joint status report by August 23, 2005. A status hearing will be held in open court on August 25, 2005.

**ENTERED:**

**Judge Ruben Castillo**
**Dated: August 1, 2005**                    **United States District Court**